<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                              :
DONNA M. BERNER,              :
                              :
         Plaintiff,           :   Civil No. 5-4762 (RBK)
                              :
         v.                   :   **OPINION**
                              :
COMMISSIONER OF SOCIAL        :
SECURITY,                     :
                              :
         Defendant.           :
_____:

**KUGLER**, United States District Judge:

    This matter comes before the Court upon appeal by Plaintiff Donna M. Berner ("Berner"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner will be affirmed.

**I.   BACKGROUND**

    Berner, a forty-eight year old woman, alleges that she is disabled with an onset date of June 26, 2003, (R. at 22) due to degenerative disc disease in the lumbar spine, arthritis, scoliosis, migraine headaches, fibromyalgia, right knee medial meniscal tear, and depression (R. at 152). She has a high school education (R. at 43), and her most recent work was as a teacher's

aide and as a packer at a glass factory (R. at 34, 39, 153).

Berner had surgery on her right knee in June 2003, which was the impetus for her to leave her position as a teacher's aide. (R. at 22.)  Berner also states that by June 2003 she already suffered from lower lumbar disc disease. (R. at 22.)  Berner underwent additional surgery on her right knee in November 2004. (R. at 24.)  Dr. Thomas Dwyer, an orthopedic surgeon, performed these surgeries.  (R. at 280-84.)

Correspondence in the record from Dr. Stephen Soloway confirms that Berner was under his care from 2002 until at least 2005, and that he treated Berner for lumbar disc disease with herniation, hypermobility and osteoarthritis in her knees, as well as fibromyalgia.  (R. at 479.)  Dr. Soloway also referred Berner to a psychologist due to her depression. (R. at 25, 479.)

Berner's medical records indicate she had a series of MRIs between May 2002 and February 2004 that revealed L3-4 through L5-S1 degenerative disc disease and associated disc bulging in her back.  (R. at 324.)  In addition, a January 2003 MRI indicated a meniscal tear of Berner's right knee.

At the request of the Social Security Administration, Dr. Theodore Brown, Jr. conducted a consultative examination of Berner in August 2003.  Dr. Brown diagnosed Berner as having major depressive disorder with psychotic features, and further elaborated that Berner "can follow and understand simple

directions and instructions and perform simple routine tasks." (R. at 472.)

Also at the request of the Social Security Administration, Drs. Hochberg and Spearman conducted consultative psychological examinations of Berner in October 2003. Further, the doctors concluded that Berner suffers from major depressive disorder with psychotic features. (R. at 297.) This examination also yielded the conclusion that Berner is "moderately limited" in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 309.) However, the doctors also concluded that Berner is "not significantly limited" in any other category. (R. at 309.)

The record contains a residual functional capacity ("RFC") assessment, dated October 8, 2002. (R. at 233.) However, this RFC assessment was made prior to Berner's knee surgeries. (R. at 113.) In lieu of relying on the outdated RFC, the ALJ found that the record demonstrates that Berner can lift no more than ten pounds at a time, sit for six hours, and stand/walk not more than two hours out of an eight hour work day. (R. at 113.) Therefore, Berner's RFC is for no more than sedentary work. (R. at 113.) Moreover, Berner's mental impairments pose additional limitations, meaning Berner is capable only of work involving

"simple instructions, routine repetitive tasks, and low stress." (R. at 113.)

Berner filed an initial application for DIB on May 8, 2002. (R. at 120-23.)  The Commissioner denied her claims and Berner did not appeal.  (R. at 74-78.) Berner filed a second application for benefits on May 31, 2003, (R. at 124-27), which the Commissioner also denied initially (R. at 79-82) and upon reconsideration (R. at 83).  Berner requested an administrative hearing, which was held before Administrative Law Judge ("ALJ") Gerald J. Spitz on January 20, 2005.  The ALJ issued a decision denying Berner's claim on February 10, 2005.  (R. at 106.) Berner then filed a Request for Review by the Appeals Council on April 8, 2005.  (R. at 11-12.)  The Appeals Council denied Berner's appeal on August 26, 2005, rendering Judge Spitz's opinion the Commissioner's final decision. (R. at 5-8.)

Judge Spitz found that Berner did not perform substantial gainful activity since her alleged disability onset date of June 26, 2003. (R. at 110.)  Judge Spitz also determined that Berner's various conditions were severe, as they had more than a minimal effect on Berner's ability to perform basic work-related duties. (R. at 110.)  However, Judge Spitz found that although severe, these conditions were not severe enough to meet or equal the criteria for the listed impairments in the Regulations. (R. at 110.)  Relying on the testimony of a vocational expert, Judge

4

Spitz determined that Berner is not capable of performing her past relevant work, given that her work as a teacher's aide required a light level of exertion. (R. at 114.) Finally, relying on the testimony of the vocational expert, who opined that Berner could return to an unskilled, simple, sedentary job, of which there were significant numbers existing in the national economy, in addition to Berner's age, education, and work experience, Judge Spitz determined that Berner is capable of returning work. (R. at 114.)

**II.   STANDARD OF REVIEW**

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 301, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v.

Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and

Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

### III. Discussion

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's RFC and analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to

perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Berner argues that the ALJ failed to 1) properly determine the plaintiff's RFC; 2) give the appropriate probative value to relevant medical opinions; and 3) appropriately assess the vocational significance of Berner's impairments when deciding that Berner could return to unskilled, no-stress, sedentary work.

A.  RFC

Berner argues that the ALJ, and therefore the Commissioner, "[leapt] to the conclusion that [Berner] has the capacity for 'work involving simple instructions, routine repetitive tasks, and low stress.'" (Pl.'s Mem. of Law at 13). To the contrary, the ALJ engaged in a lengthy recitation of the all medical opinions as well as Berner's subjective complaints before rendering his assessment of Berner's RFC. (R. at 111-13.) Judge Spitz discussed each medical opinion in turn, and why the opinion was or was not credible in light of the other evidence in the record. (R. at 111-13.) Judge Spitz discussed each function, including Berner's ability to sit, stand, walk, lift and carry. (R. at 113.) Judge Spitz also imposed further limitations on Berner's ability to work in light of her mental impairments. ((R. at 113.)

In addition, Berner emphasizes that the ALJ failed to

evaluate the assessment of Drs. Hochberg and Spearman, who evaluated Berner on behalf of the Social Security Administration. Although Berner is correct that these assessments are omitted from the ALJ's discussion of Berner's RFC, Berner fails to acknowledge that it is because the assessment was conducted by non-treating physicians[1] prior to Berner's knee surgery, and the assessment is therefore not accorded significant weight. (R. at 113.)  Moreover, Berner does little to show how inclusion of the opinions would do anything to change the outcome of this case. Dr. Spearman specifically noted in the assessment that "[claimant] is capable of performing her past work."  (R. at 310.)  This determination is even less favorable to Berner than the ALJ's RFC assessment, as the ALJ determined that Berner is not capable of returning to her previous relevant work, given the light level of exertion required as a teacher's aide.

Thus, although Berner is correct that Judge Spitz did not accord substantial weight to the RFC assessments conducted by Drs. Hochberg and Spearman, Berner fails to acknowledge the underlying reasons for the omission.  Moreover, Berner fails to acknowledge that inclusion of the assessments would actually be detrimental to his client's cause.

---

[1] The Third Circuit instructs ALJs to attribute greater authority to the opinion of a treating physician than to records from a one-time consultation. Humphreys v. Barnhart, 127 Fed. Appx. 73, 75 (3d Cir. 2005) (emphasizing the significance of the treating physician's records).

Accordingly, Judge Spitz adequately evaluated all medical evidence in the record, and he properly articulated Berner's RFC.

B.   <u>Medical Opinions</u>

Berner argues that the ALJ "failed to give the appropriate probative value to relevant medical opinions." (Pl.'s Mem. of Law at 15.)  Berner again emphasizes the omission of Drs. Hochberg and Spearman's opinions.  In addition, Berner asserts that although Judge Spitz claimed he "accept[ed] as credible and controlling the reports of Dr. Thomas Dwyer, the treating orthopedic surgeon," affording such weight to Dr. Dwyer's opinion would have led to the conclusion that Berner is "disabled." (Pl.'s Mem. of Law at 16.)

With regard to ALJ Spitz's omission of Drs. Hochberg and Spearman's assessments, please see <u>supra</u>, section III.A.

With regard to Dr. Dwyer's opinion, Berner relies on a notation Dr. Dwyer made on a disability claim form Berner submitted to her private disability insurance company immediately following her first knee surgery. (R. at 282.)  Dr. Dwyer noted that Berner could not work "at [the] present time," but also noted that her status would improve within the next two months. (R. at 282.) Berner fails to include the context for the notation.  Similarly, Berner points to a report Dr. Dwyer submitted in which he limited her ability to occasionally lift to five pounds, and her ability to sit, stand and walk to three

hours a day.  (R. at 338.) As with the previous report cited by Berner, Dr. Dwyer made this assessment immediately after her November 2004 knee surgery.  Berner completely neglects to mention that Dr. Dwyer, in a December 27, 2004 letter, noted that Berner needed to "work through her apprehension" and that she exhibited a full range of motion.  (R. at 332.)  Moreover, in July 2003, Dr. Dwyer stated that Berner would make a full recovery.  (R. at 111.)

Given Judge Spitz's lengthy recitation of all the medical opinions in the record, and Berner's failure to demonstrate how the ALJ's decision is inconsistent with Dr. Dwyer's opinion, the Court finds that Judge Spitz adequately evaluated all relevant medical opinions in the record in rendering his decision.

C.   Vocational Significance of Berner's Impairments

1.   "Incomplete and Impermissibly Vague" Terms

Berner argues that the ALJ failed to appropriately assess the nature and extent of Berner's impairments when deciding that she could return to work, albeit sedentary work, because some of the limitations in the ALJ's hypothetical questions to the Vocational Expert ("VE") were "incomplete and impermissibly vague."  (Pl.'s Mem. of Law at 21.)

When determining whether a claimant can return to work, the ALJ can seek the services of a VE.  20 C.F.R. § 404.1566(e).  The ALJ can rely on the VE's testimony as long as the hypothetical

11

questions posed to the VE accurately reflect the claimant's work-related limitations.  Id.

Here, Berner objects to the phrasing of Berner's limitations, including the requirement of a "no-stress job" and that she was limited to a "sit/stand option at the employee's option." (R. at 61.)  The VE replied that there are entry-level jobs available that meet Berner's requirements.  (R. at 62.) The ALJ followed up to clarify that these jobs were sedentary in nature, and the VE confirmed that these positions are sedentary. (R. at 62.)

Berner's concerns are misplaced.  ALJs routinely use terms such as "sit/stand option" and "low stress" routinely in the RFC context in similar cases, and appellate courts affirm the ALJs' decisions.  See Hagner v. Barnhart, 57 F.App'x. 981, 984 (3d Cir. 2003); see also Crawford v. Comm'r Soc. Sec., 363 F.3d 1155, 1158 (11th 2004). Therefore, use of the terms "no-stress job" and "sit/stand option" are not impermissibly vauge.  The VE had an accurate picture of Berner's limitations, and answered the ALJ's questions accordingly.  Therefore, the VE's testimony constitutes substantial evidence to support the ALJ's decision.

  2. Conflicts with the Dictionary of Occupational Titles

In addition, Berner alleges that the VE's testimony was "inconsistent with the Dictionary of Occupational Titles," as

12

well as Social Security Regulations and Policies.  (Pl.'s Mem. of Law at 21.)  Specifically, Berner argues that because the Dictionary of Occupational Titles ("DOT") descriptions do not conclusively establish that Berner can perform, with her limitations, the jobs the VE recommended, such as an "addresser," "packer," or "clerk," the DOT conflicts with the VE's testimony, and the ALJ's denial of benefits is not based on substantial evidence and should be reversed.

Berner's argument is again misplaced.  When the DOT is silent as to a particular functional demand, the ALJ can rely on VE testimony.  Social Security Regulations permit a VE to rely on more than just the DOT.  20 C.F.R. § 404.1566(d). The record is replete with instances of where the ALJ clearly articulated Berner's limitations to the VE, as well as the need for the VE to identify sedentary, no-stress jobs that would accommodate her need to sit/stand. (R. at 61.)  Given that the ALJ provided the VE with a complete picture of Berner's needs, and that the DOT is not considered a comprehensive list of jobs and their accompanying functional demands, the ALJ did not err when he relied on the VE's testimony to supplement functional demands that the DOT lacks.

**IV.  Conclusion**

There is substantial evidence to support the ALJ's determination that Berner is not entitled to DIB because,

although her conditions are severe, they would not preclude her from performing a sedentary, no-stress job that enables her to sit/stand when necessary.  The ALJ's decision is affirmed.


Dated: 12/1/2006                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge